Devine, J.
 

 Appeal from a judgment of the Supreme Court (McNally Jr., J.), entered October 21, 2016 in Albany County, which dismissed petitioners’ application, in a proceeding pursuant to CPLR article 78, to review a determination of the Civil Service Commission placing enrollees in the Empire Fellow Program in the noncompetitive jurisdictional class.
 

 The Empire Fellow Program was created as part of an initiative to recruit and train professionals for policymaking roles in state government. The fellows work for two years under the auspices of the Office of General Services (hereinafter OGS), which assigns them to perform work under senior officials throughout the executive branch that involves the formulation, preparation and execution of high-level projects. In 2013, the Civil Service Commission (hereinafter Commission) placed a title for the fellows in the exempt jurisdictional class. OGS reviewed its experience with the fellows and, in 2014, asked the Commission to amend its rules to provide a new title, that of Empire Fellow, for 230 fellows in the noncompetitive jurisdictional class (see Civil Service Law §§ 6 [1] [a]; 40, 42).
 

 The Public Employees Federation, AFL-CIO opposed the requested title classification and, after the Commission proposed a rule change that would make it, reiterated that opposition in comments. The Commission ultimately adopted the rule as proposed aside from specifying that the fellow positions were temporary, prompting petitioners to commence this CPLR article 78 proceeding. Supreme Court dismissed the petition and petitioners appeal.
 

 We affirm. “Administrative determinations concerning position classifications are . . . subject to only limited judicial review, and will not be disturbed in the absence of a showing that they are wholly arbitrary or without any rational basis” (Cove v Sise, 71 NY2d 910, 912 [1988]; see Matter of Criscolo v Vagianelis, 12 NY3d 92, 97 [2009]; Matter of Brynien v New York State Dept. of Civ. Serv., 79 AD3d 1501, 1502 [2010]). It is well settled “that appointments and promotions within the civil service system must be merit-based and, when ‘practicable,’ determined by competitive examination” (Matter of Wood v Irving, 85 NY2d 238, 243 [1995], quoting NY Const, art V, § 6; see Matter of Brynien v New York State Dept. of Civ. Serv., 79 AD3d at 1503). The Commission may nevertheless place a title in the noncompetitive class where “it is impracticable to determine merit and fitness for the berth by competitive examination” (Matter of Goodfellow v Bahou, 92 AD2d 1085, 1085 [1983], lv denied 59 NY2d 606 [1983]; see Matter of Wood v Irving, 85 NY2d at 243; Matter of Brynien v New York State Dept. of Civ. Serv., 79 AD3d at 1503). Impracticability could arise “due to either the confidential nature of the position or because the character of the position renders an examination inadequate to measure the qualifications of the prospective employee” (Matter of Benson v McCaul, 268 AD2d 756, 758 [2000], lv denied 94 NY2d 764 [2000]).
 

 The fellows have set educational and experience requirements and, while they might be assigned anywhere in the executive branch during their temporary sojourn in state service, all “report to high-level agency or Executive Chamber officials” and perform sensitive tasks that include policy development, review and implementation. The Commission had before it staff analyses and a summary memorandum that reviewed the classification request of OGS and recommended a noncompetitive classification. The record includes those documents and several explanatory affidavits, most importantly that of the Coordinator of Civil Service Commission Operations who reviewed the analyses and composed the memorandum. The affidavits are properly before us (see Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd., 95 AD3d 1402, 1405 [2012]), and they assist in creating a record that is “sufficiently developed to provide an adequate basis upon which to review the decision of the Commission” (Matter of Benson v McCaul, 268 AD2d at 758).
 

 The analyses and memorandum acknowledged that the “knowledge, skills and abilities” needed to analyze and develop policy could be assessed by competitive examination and, indeed, titles involving those skills are classified to require that testing. A competitive examination could not discern, however, whether a potential fellow had the “diplomacy, sound judgment and discretion” needed to both responsibly handle restricted information and maintain the trust of the senior appointed officials with whom he or she would closely work. The Coordinator explained that these intangible personal skills have been “consistent . . . justifications for non-competitive classification” over time, and the Commission found as much (see Matter of Berkowitz v New York State Civ. Serv. Commn., 150 AD2d 978, 979-980 [1989], lv denied 74 NY2d 610 [1989]; Matter of Goodfellow v Bahou, 92 AD2d at 1086; cf. Matter of Shafer v Regan, 80 NY2d 1006, 1008 [1992]). The memorandum also stressed that new fellows would need to be selected every two years, which the Coordinator stated made competitive testing impracticable due to respondent Department of Civil Service’s “lack of experience in testing for fellowship-type positions, and the conflict between the two-year [flellow appointment cycle and the time and resources needed to develop a new competitive testing regimen” (cf. Matter of Andresen v Rice, 277 NY 271, 281 [1938] [competitive examination practicable where appointment was for renewable two-year term]). The foregoing provides a rational basis for the Commission’s classification of the Empire Fellow title as noncompetitive (see Matter of Benson v McCaul, 268 AD2d at 760; Matter of Goodfellow v Bahou, 92 AD2d at 1086) and, as such, we will “not interfere with its judgment” despite “a substantial variance of opinion” as to the best classification (Matter of Grossman v Rankin, 43 NY2d 493, 506 [1977]; see Matter of Brynien v New York State Dept. of Civ. Serv., 79 AD3d at 1503).
 

 The Commission implemented the title classification by promulgating an amendment to its regulations (see 4 NYCRR 2.2, Appendix 2), and petitioners complain that it did not do so in “substantial compliance with the State Administrative Procedure Act’s provisions” (Matter of Industrial Liaison Comm. of Niagara Falls Area Chamber of Commerce v Williams, 72 NY2d 137, 144 [1988] [emphasis omitted]; see State Administrative Procedure Act § 202 [8]). In that regard, the notice of proposed rulemaking did not include various required statements and analyses, instead referring to ones published earlier (see State Administrative Procedure Act §§ 201-a, 202-a, 202-b, 202-bb). A staff analyst for the Commission, whose duties included overseeing its rule promulgation process, explained in an affidavit that the Commission published one set of these statements and analyses a year because they are identical for any “ministerial” jurisdictional classification resolution that amends an existing regulatory appendix but has no other relevant impacts. This practice facially comports with the State Administrative Procedure Act (see State Administrative Procedure Act §§ 201-a [2] [h]; 202-a [4]; 202-b [4]; 202-bb [5]), and petitioners fail to explain why it would be inappropriate here.
 

 As for petitioners’ other complaints regarding the rule-making process, the final amendment differed from the proposed one by making the temporary nature of the appointment explicit, a far from “substantial” change that did not require the publication of a formal notice of revised rule (State Administrative Procedure Act § 202 [4-a]). Petitioners further point out that the Commission failed to assess public comments on the proposed amendment in its notice of adoption (see State Administrative Procedure Act § 202 [5] [b]), but the Commission quickly remedied that mistake by publishing an erratum with the assessment. There is, in short, no substantial procedural defect in the rule-making process that would warrant annulling the final product.
 

 Petitioners’ remaining contentions have been examined and lack merit.
 

 Egan Jr., J.P., Clark, Mulvey and Rumsey, JJ., concur.
 

 Ordered that the judgment is affirmed, without costs.